IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ERIC L. PROSHA,**

    Plaintiff,

v.                                                    Civil Action No. **3:16CV163**

**DAVID ROBINSON,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Eric L. Prosha, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983. The action proceeds on Prosha's Particularized Complaint ("Complaint," ECF No. 21).[1] The Court previously dismissed a number of Prosha's claims.[2] Only the following claims against Defendant Robinson remain before the Court:

    Claim One:    Defendant Robinson violated Prosha's First Amendment right of Free Exercise[3] when Prosha was provided religiously inadequate meals during Passover 2015. (Compl. ¶ 26.)

    Claim Two:    Defendant Robinson violated Prosha's Eighth Amendment[4] right against cruel and unusual punishment when Prosha was provided

---

[1] Prosha initially sought to bring this action with several other inmates. By Memorandum Order entered on March 16, 2016, the Court informed Prosha and each of the other inmates that they would have to pursue their action individually. (ECF No. 1.)

[2] Prosha named the following individuals as defendants: David Robinson, Chief of Operations at the Virginia Department of Corrections ("VDOC"); Carolyn Parker, Warden of Greensville Correctional Center ("GCC"); Ms. Springs, Housing Unit Manager at GCC; Eugene Wiggins, a chaplain at GCC; and, John/Jane Doe, the Kitchen Supervisor at GCC. (Compl. 1, 3.) Because Prosha failed to serve Wiggins and John/Jane Doe, the Court dismissed all claims against them without prejudice in a separate Memorandum Opinion and Order. (ECF Nos. 44, 45.) By Memorandum Opinion and Order entered on January 25, 2018, the Court dismissed all claims against Defendants Parker and Springs and Claim 3 as it pertained to Defendant Robinson. (ECF Nos. 46, 47.)

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

> religiously inadequate meals during Passover 2015. (*Id.*)

Claim Four: Defendant Robinson placed a substantial burden on Prosha's exercise of his religion in violation of RLUIPA[5] when Prosha was served religiously inadequate meals during Passover 2015. (*Id.*)

*Prosha v. Robinson*, No. 3:16CV163, 2018 WL 564855, at *7 (E.D. Va. Jan. 25, 2018). The Court also dismissed Prosha's demand for monetary damages in conjunction with Claim Four. *Id.*

Defendant Robinson has moved for summary judgment and provided Prosha with *Roseboro*[6] Notice. (ECF Nos. 57, 59.) Prosha has responded. (ECF No. 64.) For the reasons that follow, the Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART. The Court WILL GRANT the Motion for Summary Judgment with respect to Claims One and Two and WILL DENY the Motion for Summary Judgment with respect to Claim Four.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] 42 U.S.C. § 2000cc–1(a).

[6] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448).

In support of his Motion for Summary Judgment, Defendant Robinson has submitted: the affidavit of A. Anderson, the Senior Director of Food Service Operations at GCC (ECF No. 58–1, at 1–3); the affidavit of S. Davis-Bryan, the manager of the VDOC correspondence unit (ECF No. 58–2); his own affidavit (ECF No. 58–3); the affidavit of Tameca Woodley, the Chief of Housing and Programs at GCC (ECF No. 58–4); and a variety of institutional records (*see, e.g.*, ECF No. 58–1, at 4–11).[7] Prosha's Complaint is sworn to under penalty of perjury. (Compl. 8.) Additionally, the record contains a number of grievances and complaints submitted by other inmates who initially sought to bring the action jointly with Prosha.

---

[7] The Court employs the pagination assigned to these submissions by the CM/ECF docketing system. The Court corrects the capitalization and punctuation in the quotations from the parties' submissions.

3

In light of the foregoing submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment.

## II. Summary of Undisputed Facts

According to Prosha, he

> is now, and at all times relevant to the events described herein, an adherent of the House of Yahweh. The House of Yahweh is a religious organization whose adherents believe it [is] necessary to abide by the Torah. Adherents must . . . keep annual festivals of the Old Testament, including the assembling of members, once a year on the evening before Passover, to hold a solemn observance of Yashua's Memorial.

(Compl. ¶ 12.) During April of 2015, Prosha was housed in GCC. (*See id.* ¶¶ 4, 13.) "[T]he House of Yahweh group had previously arranged with Chaplain Wiggins to receive the proper meals for the Passover of the Unleavened Bread," which was to begin at lunch on April 3, 2015 and continue through the evening meal on April 11, 2015. (*Id.* ¶ 13; ECF No. 58–4 ¶ 7.)

On January 26, 2015, Defendant Robinson issued a memorandum to the VDOC Wardens and Superintendents regarding the procedures for the observance of the 2015 Passover. (ECF No. 58–4 ¶ 7.) "The memorandum defined a Passover Meal as a meal from the Common Fare menu which is free of leavened food items, legumes, and grains." (*Id.* ¶ 8.) The memorandum instructed that for Passover meals, matzah would be substituted for bread for the duration of Passover. (*Id.* ¶ 7.) The Passover Meals meet basic nutritional needs. (*Id.* ¶ 8.)[8]

Because Prosha was approved to attend services associated with the observance of Passover, he was approved to receive a Passover tray. (ECF 58–1 ¶ 4.) "In addition to the Passover tray, a regular Common Fare tray is also served during Passover. The regular Common

---

[8] In addition to meals provided by VDOC Food Services, VDOC offenders were and are allowed to order special "Kosher for Passover" pre-packaged meals through the VDOC approved third party vendor, Keefe Commissary. (ECF No. 58–4 ¶ 9.) Prosha did not place any orders from this vendor for Kosher for Passover meals during 2015. (*Id.*)

4

Fare tray contains leavened (food with yeast) food items such as bread, French toast, and noodles, while the Passover tray does not contain these items." (*Id.*) In order for Prosha to receive a Passover tray,

> Prosha would come to the dining hall as usual and get in the Common Fare line. Common Fare offenders are served first. The feeding line is called a "blind line." When the offender approaches the window to receive his tray, he cannot be seen by food service staff. In order to receive a Passover tray, Prosha would need to present his offender identification and request a Passover tray. With his request, staff would then check the master pass list for his name and he would be given a Passover tray. The offender would consume the matzah issued to him as a bread substitute. If the offender does not specifically request a Passover tray, he is provided a regular Common Fare tray. Food Service staff worked with the Chaplain to ensure that offenders are informed that in order to receive a Passover tray, the offenders must request the tray at the food service window.

(*Id.* ¶ 5.)

On April 2, 2015, Prosha received his matzah bread distribution for Passover from Chaplain Wall.[9] (ECF No. 58–4, at 23.) According to Prosha, on April 3, 2015, when he went to obtain his meal, the tray contained egg noodles, which he could not eat because they contained yeast. (Compl. ¶ 13.) Prosha complained to the kitchen supervisor, who informed Prosha that this was the only food they had to give him. (*Id.*) Prosha contends that he was unable to eat the meal because of the requirements of his religion. (*Id.*)[10]

"At every meal through April 11, 2015, [Prosha] was served items that did not meet the requirements of the House of Yahweh." (*Id.* ¶ 15.) In each instance, Prosha informed the

---

[9] It is unclear from the parties' submissions whether Chaplain Wall provided Prosha with all of the matzah that Prosha was supposed to consume for Passover or whether Prosha obtained additional matzah in the dining hall.

[10] In his unsworn Response to the Motion for Summary Judgment, Prosha contends that: "During Passover 2015, there was no such thing as a Passover tray. If there was, Plaintiff would have definitely asked and received one." (ECF No. 64, at 3.)

5

correctional officer on duty and "was told that [this] was all they had to give him." (*Id.*) According to Prosha,

> [A]dherents of the House of Yahweh are not allowed to consume commercial dairy products such as milk, butter, ice cream, yogurt or cheese blends because they contain trace amounts of blood from unhealthy cows. Yet, Plaintiff was served milk each day and butter regularly at meals. It is also known that adherents must eat kosher foods only.

(Compl. ¶ 19.)[11]

Other documents in the record support Prosha's assertion that Kosher meals were not available during the 2015 Passover. Specifically, on April 3, 2015, inmate Sirleaf submitted multiple emergency grievances wherein he complained that he would not eat a non-Kosher meal during Passover. (ECF No. 2–7, at 11–13.) Three different correctional officer responded that either "Per Chaplain Wall, NO KOSHER meal during normal meals," (*id.* at 11–12), or "there is no special meal," *id.* at 13.[12] Four other inmates submitted similar emergency grievances and received similar responses. (*Id.* at 15–18.)

VDOC records reflect that, between February and May of 2015, Prosha regularly purchased and presumably consumed a host of items that were not Kosher.[13] For example in February of 2015, Prosha purchased Texas Beef Ramen and Chili Ramen. (ECF No. 58–4, at

---

[11] Although the breakfast meals on the Passover tray provided for a 16-ounce glass of milk, the lunch and dinner meals did not contain any dairy products that Prosha has identified as offensive to his religion. (ECF No. 58–1, at 8–9.) The lunch and dinner trays for the Passover meal tray contained margarine, not butter. (*Id.*)

[12] On April 7, 2015, inmate Sirleaf submitted another emergency grievance wherein he complained about having to eat non-Kosher foods for breakfast. (ECF No. 2–7, at 26.) A correctional official responded that "Per Food Service Director there is no special meal. Just the Common Fare." (*Id.*)

[13] Defendant Robinson provided a list of all items available for sale in the commissary. (ECF No. 58–4, at 24–25.) The list identifies whether an item is Kosher by placing a "K" next to the item. (*Id.*) In order to obtain the full name of the items Prosha purchased, the Court often refers back to the list.

26.) In March of 2015, Prosha purchased a variety of Ramen products, chili with beans, and summer sausage. (*Id.* at 27.) On April 2, 2015, just before Passover, Prosha purchased the following non-Kosher items: two types of Ramen, Cool Ranch Doritos, Duplex Cream Cookies, and BBQ corn chips. (*Id.* at 28.) On that same day, Prosha also purchased the following Kosher items: Colombian Coffee, Zippy Monster Iced Honey Bun, Zippy Peanut Butter Crème Cookies, an iced cinnamon roll, and a box of Saltine crackers. (*Id.*)

According to Prosha, on April 6, 2015, he sent a letter to Defendant Robinson explaining that meals served during Passover were deficient. (Compl. ¶ 21.) Prosha did not receive a response to that letter. (*Id.*)

"The Offender Correspondence Unit is responsible for tracking and responding to offender correspondence addressed to the Virginia Department of Corrections (VDOC) and its employees." (ECF No. 58–2 ¶ 4.) The VDOC Correspondence Unit has never received any letters from Prosha to Defendant Robinson. (*Id.*) Defendant Robinson does not recall ever receiving a letter from Prosha. (ECF No. 58–3 ¶ 5.)

In June of 2015, Prosha was removed from the Common Fare diet because he failed to pick up the required seventy-five percent of the meals for the month of April. (ECF No. 58–1 ¶ 8; *see* ECF No. 58–1, at 11.) Prosha attempted to excuse this failure by asserting that he was asleep during those meal times. (ECF No. 58–1, at 11.) Prosha was free to reapply for the Common Fare diet in December of 2015, but he did not. (ECF No. 58–1 ¶ 8.) Prosha did not participate in the 2018 Passover observance. (*Id.*)

### III. Claim One–Free Exercise

In Claim One, Prosha contends that Defendant Robinson violated his First Amendment right of Free Exercise when Defendant Robinson failed to provide Prosha with religiously

7

adequate meals during Passover 2015. In order to survive summary judgment on this claim, Prosha must demonstrate "(1) that he holds a sincere belief that is religious in nature" and (2) that Defendant Robinson imposed a substantial burden on the practice of his religion. *Whitehouse v. Johnson,* No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing *Hernandez v. Comm'r,* 490 U.S. 680, 699 (1989)). Moreover, in order to hold Defendant Robinson liable, Prosha must demonstrate that Defendant Robinson acted intentionally, not merely negligently, in imposing a substantial burden upon the exercise of Prosha's religion. *See Lovelace v. Lee,* 472 F.3d 174, 194–95 (4th Cir. 2006) (citing *Emp't Div. v. Smith,* 494 U.S. 872, 890 (1990); *Shaheed v. Winston,* 885 F. Supp. 861, 868 (E.D. Va. 1995)). This Prosha fails to do.

The record fails to indicate that Defendant Robinson acted intentionally in depriving Prosha religiously appropriate meals during Passover of 2015. Indeed, Defendant Robinson took numerous steps to ensure that offenders would receive a religiously appropriate diet for Passover 2015. Defendant Robinson issued a memorandum to the Wardens and Superintendents regarding the procedures for the observance of the 2015 Passover. (ECF 58–4, at 14–15.) The memorandum explained the VDOC's procedures to provide appropriate meals, free of leavened food items and legumes. (*Id.*) In addition to meals provided by VDOC Food Services, Defendant Robinson ensured that VDOC offenders were allowed to order special "Kosher for Passover" pre-packaged meals through the VDOC approved third-party vendor, Keefe Commissary. (ECF No. 58–4, at 15–16.)

Although Prosha has submitted evidence that supports his contention that separate Passover trays were not available at GCC during Passover 2015, the record does not indicate that

Defendant Robinson was aware of this deficiency. Accordingly, Claim One will be DISMISSED.

### IV. Eighth Amendment—Claim Three

To survive a motion for summary judgment on an Eighth Amendment "cruel and unusual punishment" claim, Prosha "must prove two elements: (1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). An inmate must demonstrate both that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson*, 501 U.S. at 298–300). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that the defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of

and disregards an excessive risk to inmate health or safety; the official must both
be aware of facts from which the inference could be drawn that a substantial risk
of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

Prosha contends that he sent a letter to Defendant Robinson on April 6, 2015, that informed Robinson of the deficiencies in the Passover meals. The record, however, does not indicate that the letter was ever transmitted to Robinson. Moreover, Prosha fails to explain why, even if Defendant Robinson had received the letter, Robinson would have known that Prosha faced a substantial risk of serious harm. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("The plaintiff . . . has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" (quoting *Farmer*, 511 U.S. at 837)). Accordingly, because Prosha fails to demonstrate deliberate indifference by Defendant Robinson, Claim Two will be DISMISSED.

## V. RLUIPA–Claim Four

### A. Mootness

With respect to Claim Four, what remains is Prosha's demand for a declaratory judgment that his rights under RLUIPA were violated by the failure to provide an adequate religious diet during Passover. "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (citation omitted). This Court is precluded from advisory opinions and "is without jurisdiction 'to decide questions that cannot affect the rights of litigants in the case before them.'" *LaFaut v. Smith*, 834 F.2d 389, 395 (4th Cir. 1987) (citation omitted) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). Here, Defendant Robinson suggests that Prosha's RLUIPA claim is moot because: (1) Prosha's RLUIPA claim pertains solely to Passover 2015, which is long past; and (2) Prosha chose not to participate in Passover 2018 and there is no indication he will participate in future Passovers.[14] Given Prosha's *pro se* status, the Court reads his Complaint and other submissions to seek equitable and declaratory relief not just for Passover 2015, but also for future Passovers. Moreover, Prosha contends that he "did sign-up for matzah, unleavened bread and for Passover 2018," but he was injured by other inmates and sent to the hospital. (ECF No. 64, at 4.) Upon his return from the hospital, Prosha was placed in segregation for several weeks. (*Id.*) Given these circumstances, the Court declines to dismiss

---

[14] Defendant Robinson also suggests that the Court should dismiss the RLUIPA claim as moot because Prosha has been removed from the Common Fare diet and has not chosen to reapply. Defendant Robinsion, however, has failed to introduce evidence that adequately explains the relevance of the Common Fare diet to Prosha's religious beliefs. *See Shabazz v. Johnson*, No. 3:12CV282, 2015 WL 4068590, at *2 (E.D. Va. July 2, 2015) (emphasis added) (citing an affidavit for the proposition that the "'Common Fare diet was designed specifically to meet the dietary needs of offenders who, for religious reasons, require a *Kosher non-pork diet* and whose dietary requirements cannot be accommodated with foods provided' by the regular menu").

Prosha's RLUIPA claim as moot. Moreover, as explained below, a material dispute of fact precludes the dismissal of Claim Four on summary judgment.

### B. RLUIPA

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
> **(1)** is in furtherance of a compelling governmental interest; and
> **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Thus, to begin, Prosha must demonstrate that Defendant Robinson's policies impose a "substantial burden" on his religious exercise. In determining if Prosha has met this standard, the Court must answer two questions: "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?" *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004); *see Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012) (employing similar two-part inquiry). The Fourth Circuit has explained that a substantial burden

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.

*Couch*, 679 F.3d at 200 (alterations and omission in original) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).

Defendant Robinson does not dispute that eating religiously appropriate meals during Passover constitutes a religious exercise. Prosha has submitted evidence that supports his assertion that he was not and potentially will not be able to eat a Kosher diet during Passover. Such evidence establishes a substantial burden upon Prosha's religious exercise. *See Haendel v. Clark*, No. 7:17–CV–00135, 2018 WL 4473118, at \*4 (W.D. Va. Sept. 18, 2018).

Defendant Robinson counters that no substantial burden exists because, "[t]he Passover meals provide a religious diet that reasonably accommodates certain religious or spiritual dietary needs and meets basic nutritional needs." (ECF No. 58, at 14.) However, as reflected above, although Defendant Robinson directed prison officials to provide inmates who wished to participate in Passover with a special Passover Meal, there is a genuine dispute as to whether those special Passover Meals were and are available at GCC.

Defendant Robinson persists that regardless of the availability of Passover Meals, Prosha's rights under RLUIPA have not been violated because Prosha "could have eaten the Common Fare tray and eaten the matzah." (*Id.* at 15.) Prosha, however, has submitted evidence that indicates, at least during Passover, he "must eat Kosher foods only." (Compl. ¶ 19.) As noted above, *supra* footnote 14, Defendant Robinson has not directed the Court to evidence that demonstrates that the Common Fare tray is Kosher. Moreover, the record contains documents from correctional officials that suggest that the Common Fare tray is not Kosher. (*See* ECF No. 2–7, at 11–13.)

Next, Defendant Robinson contends that Prosha's ability to eat Kosher meals for Passover was not substantially burdened because, he "had the option to order special 'Kosher for Passover' pre-packaged meals through the VDOC approved third-party vendor, Keefe Commissary." (ECF No. 58, at 15.) This argument, however, is not accompanied by any adequate analysis of whether Prosha had and will have sufficient funds to pre-purchase enough Kosher foods for the entirety of Passover.[15] Furthermore, the deadline for ordering Kosher foods for Passover is roughly five weeks before Passover. (ECF No. 58–4, at 15.) Defendant Robinson's policies lulled Prosha and other inmates into believing that there was and would be

---

[15] According to Defendant Robinson's submission, each Kosher entrée costs $5.49. (ECF No. 58–4, at 15.) Thus, just to purchase the three entrées per day for Passover would cost $131.76.

no need to order food ahead of time, because prison officials would be providing a religiously appropriate diet for Passover.[16] Given these circumstances, Prosha's ability to order Passover meals from Keefe Commissary does not foreclose any RLUIPA violation. *See Haendel*, 2018 WL 4473118, at *4 (concluding Jewish inmate's option to purchase items from Keefe Commissary for Passover did not diminish the substantial burden placed on his religion where the actions of prison officials made that option unavailable).

Finally, Defendant Robinson notes that around the time of Passover 2015, Prosha bought items from the commissary that were not Kosher. There is, however, no evidence that Prosha purchased and consumed non-Kosher items during Passover. Moreover, the record reflects that roughly half the items purchased were Kosher. Admittedly, an inmate's voluntary consumption of items that are purportedly inconsistent with his professed religious diet undercuts the notion that prison officials' failure to provide an appropriate diet substantially burdens his religious exercise. *See Al-Azim v. Everett*, No. 3:14CV339, 2017 WL 1097219, at *12 (E.D. Va. Mar. 3, 2017), *report and recommendation adopted*, No. 3:14CV339, 2017 WL 1100436 (E.D. Va. Mar. 22, 2017) (citation omitted). Unlike the plaintiffs in *Al-Azim*, who professed to desire to keep a

---

[16] Robinson contends,
> The Western District of Virginia previously held that there is no substantial burden on an inmate['s] exercise of religion with respect to the availability of Kosher for Passover meals where meals were available for order from [the] commissary for Passover and the inmate did not place [an] order for those food items.

(ECF No. 58 at 15–16 (citing *Dellinger v. Clarke*, 172 F. Supp. 3d 898, 903 (W.D. Va. 2016)). This case is of little aid to Robinson. In *Dellinger*, the inmate had one claim dealing with the inability to purchase Kosher meals from the commissary during Passover (the "Commissary Claim") and another claim dealing with the inadequacy of the Common Fare meals for his religious needs during Passover (the "Common Fare Claim"). 172 F. Supp. 3d at 903. The Court concluded that since the inmate could have, but did not, attempt to order Kosher meals from the commissary, defendants did not substantially burden his religion, and dismissed his Commissary Claim. *Id.* Nevertheless, the Court did not find the inmate's failure to order Kosher meals from the commissary relevant to his Common Fare Claim. *Id.* The Court denied defendants' motion for summary judgment with respect to the Common Fare claim. *Id.*

religious diet all year round, Prosha's RLUIPA claim focuses on his desire to eat Kosher only during Passover. Prosha's failure to keep Kosher at other times of the year, while relevant, is insufficient to warrant the dismissal of this claim on summary judgment. *Lovelace*, 472 F.3d at 188 ("[A]n inmate's right to religious exercise is substantially burdened by a policy, like the one here, that automatically assumes that lack of sincerity (or religiosity) with respect to one practice means lack of sincerity with respect to others."). Accordingly, Defendant Robinson's Motion for Summary Judgment with respect to Claim Four will be DENIED.

## VI. Conclusion

Defendant Robinson's Motion for Summary Judgment (ECF No. 57) will be GRANTED IN PART and DENIED IN PART. The Motion will be GRANTED as to Claims One and Two and DENIED as to Claim Four. Claims One and Two will be DISMISSED. The action will be referred to the Honorable David J. Novak, United States Magistrate Judge, for settlement. Counsel and Prosha shall abide by whatever further instructions or requirements may be imposed by Magistrate Judge Novak. Defendant Robinson shall contact the Court within seven (7) days of the date of entry hereof to set the matter for an evidentiary hearing.

An appropriate Order will accompany this Memorandum Opinion.

/s/ _____
Roderick C. Young
United States Magistrate Judge

Date: November 2, 2018
Richmond, Virginia